## SATTERFIELD *v.* SPEIR, executrix, *et al.*

1. One who invokes equitable aid either in construing or reforming a written contract for the sale of land, for the purpose of having the descriptive terms employed with respect thereto applied to their subject-matter, must, if such terms are ambiguous, or if under the facts alleged reformation is proper, in his pleading so describe the premises in question as to render certain the location and boundaries of the same. Failing in this, a petition of this nature is demurrable for uncertainty.
2. Applying to the petition under review in the present case the rule above announced, it was for the reason indicated fatally defective, and therefore, even if it was in other respects meritorious, the court did not err in dismissing it on demurrer.

Submitted October 2, — Decided October 30, 1900.

Equitable petition. Before Judge Fite. Bartow superior court. July term, 1899.

The petition was by Satterfield individually and as administrator of Mrs. Stegall, and invoked equitable aid in construing or reforming a bond for title to the intestate from Speir, one of the defendants, as to the description of a part of the property to be conveyed. The bond, after reciting that Mrs. Stegall had contracted to purchase a portion of the farm known as the Dr. James H. Speir farm, on the Etowah river, in the 21st district and 2d section of Cherokee county, Georgia, and after describing a part of the property contracted for as " all that portion of farm lying on the west side of said river, containing eighty acres more or less," describes the part in question as follows: " and also forty acres of said farm lying on the east side of said river, the said forty acres to be laid off as nearly as practicable in the shape of a square, bounded on the west by Etowah river and on the south by a branch and an old ditch formerly conveying the water of said branch into said river, which branch runs in a westerly direction through the portion of said farm on the east side of said river." From the petition it appears that the forty acres here referred to have never been laid off. Concurrently with the execution of this bond, and as a part of the same transaction, so much of the Speir farm as was not included in the sale evidenced by the bond was exchanged by Speir with Mrs. Stegall, as guardian, for land of her minor children, E. D. Puckett and Pauline B. Puckett, both of whom are parties defendant to the petition, the former having attained his majority and the latter having married, and being represented by her husband, Steele, as guardian. The petition alleges that the petitioner, as administrator, and E. D. Puckett, and Steele, as guardian of his wife, agreed to get a surveyor and lay off the land in question, and a surveyor was procured for that purpose, " but on attempting to run the lines of said forty acres so as to have the same in the shape of a square, with the Etowah river for its west boundary, and a branch and ditch, as mentioned in said bond for titles, for its southern boundary, it was ascertained that the only branch and ditch flowing and extending into the Etowah river on the east side of the same in said farm, instead of running and extending through said farm in a westerly direction, ran and extended through the same in a southwesterly direction, being more of a southerly than a westerly direction, and that the direction of said river itself as it flowed through that portion of said farm was a little west of south, so that

said branch and ditch, by junction with said river, formed an acute angle instead of a right angle, and the land lying between said river on the one side and the branch and ditch on the other was wedge-shaped, as shown" in an exhibit to the petition. "Between ten and fifteen acres of land in said triangular or wedge-shaped tract is almost worthless for cultivation, being in part too wet and low and in a slough and subject to overflow, and in part a thin-soiled broom-sedge ridge, unfit for tillage, whereas just north of and adjacent to said worthless land there is a large body of fine, fertile, river-bottom land, in which it has always been petitioner's understanding that his intestate's forty acres were to be laid off, on the east side of said river; and such had been the understanding of intestate and of her husband and her two children aforesaid; and said Speir, in bargaining said land to intestate, has stated that the forty acres would be practically square in shape and all tillable, fertile land, and pointed out and indicated the body of fertile bottom aforesaid, lying north of the worthless land aforesaid, as the location of the forty acres." When the surveyor undertook to lay off the forty acres, "E. D. Puckett and J. B. Steele, as guardian for his wife, insisted that the forty acres should be laid off so as to include the whole of said wedge-shaped tract, including the worthless land therein, construing such to be the meaning and purpose of the bond for titles aforesaid; to which method of laying off said forty acres petitioner objected, and insisted that the forty acres should be laid off so as to give intestate's estate forty acres in a square shape, and so that the same should not include the worthless lands in said wedge-shaped tract; and contended that such was the meaning and intent of said bond for titles, or, if not, that there was a mistake in the same, the intention of all parties to the original contract being as petitioner contended. Puckett and Steele refused to agree with petitioner, and the surveyor was unable to lay off said forty acres of land and did not do so; and petitioner as administrator can not determine how much rent, or from what forty acres, he shall collect for the current year's rent; nor can he, if the land is to be kept together another year, know how, or what forty acres, to rent; or, if he sells the same, he can not know what particular forty acres to sell." Petitioner, as guardian ad litem by appointment of the judge of the superior court, represented the minors in the exchange of property whereby they acquired that portion of the Speir farm

which was not bargained to the intestate, "and then understood and believed that the ditch and branch forming the south boundary of said forty acres ran to said river in a westerly direction, practically at right angles with the river, so that a square forty acres could be laid off, with the branch and ditch for its south boundary and said river for its western boundary." Petitioner signed as surety the notes given by the intestate to Speir for purchase-money of the land bargained for, relying upon Speir's statement that the forty acres "was all first-class river-bottom land, and that the same, as described, was, and when laid off would be, practically square in shape." Such was the understanding and intention of Speir, of the intestate, and of the minor children, as well as of petitioner, at the time the contracts of sale and exchange were entered into; and it was in both cases the real contract that the forty acres should be such as petitioner claims. Speir is threatening to sue petitioner individually upon certain of the purchase-money notes which are past due. Petitioner prays "that the court may construe said bond for titles, and by decree declare the true meaning thereof to be that forty acres of land to be laid off on the east side of Etowah river in said Dr. James H. Speir place, for intestate's estate, shall be in the shape of a square, each side being eighty rods in length, and the square so located and laid off . . as that [it] shall rest on the east bank of said river as its western boundary, and the southeast corner of said square shall rest in and upon the branch or ditch mentioned in said bond for titles, making the south boundary of said square a line eighty rods in length, extending from the southeast corner in said branch or ditch to the southwest corner of said square on the east bank of said river, said line being perpendicular to the line of the east bank of said river at that point;" that if the court shall not be able to so construe the bond as it is written, it be decreed that the bond be corrected, so that the land shall be described as indicated in the preceding prayer; that if it be adjudged that the forty acres must be so laid off as to include the land embraced in the wedge-shaped tract, petitioner be held discharged from liability as surety on the purchase-money notes; that a failure of consideration, to an amount stated, be adjudged in favor of intestate's estate and deducted from the notes; and that Speir be enjoined from prosecuting any suit on the notes, except as he may set up the same in his answer to the petition; also for general relief.

The petition was dismissed on demurrer, and petitioner excepted.

*Thomas W. Milner & Sons,* for plaintiff.

*John W. Akin* and *E. W. Coleman,* for defendants.

FISH, J.   The controversy arose over the proper location of a tract of forty acres of land purchased by the plaintiff's intestate, Mrs. Emily P. Stegall, from Speir, one of the defendants.   In his suit the plaintiff invokes the aid of equity in construing, or reforming, the description of this tract of land, contained in a bond for titles which Speir gave to Mrs. Stegall.   The court below sustained two demurrers to the petition, a joint demurrer filed by two of the defendants and a separate demurrer filed by the other defendant, and dismissed the case as to all the defendants; and we are to determine whether the court erred in so doing.   Irrespective of any other questions made by the demurrers, we think that they were properly sustained for want of equity in the petition.   A fatal defect in the petition is that the plaintiff fails to allege what particular tract of forty acres of land his intestate purchased from the defendant Speir.   His allegations furnish no description by which to definitely locate and define the tract.   His allegations in reference to the tract of land that the parties to the contract intended, their understanding and the understanding of all the defendants with reference thereto, at the time the contract was entered into, the representations of Speir as to the character and location of the tract, taken all together, utterly fail to distinctly describe any particular tract of land.   These allegations amount to simply this : that the forty-acre tract was to be laid off in the Speir farm, in the 21st district and 2d section of Cherokee county, in that portion of the farm lying on the east side of the Etowah river; that it was to be practically square in shape, to be bounded on the west by the river, and so laid out as to include within its boundaries only fertile river-bottom land; and that Speir pointed out the location of this tract as being within a large body of fine, fertile river-bottom land lying just north of and adjacent to some ten or fifteen acres of worthless land which are embraced in a triangular or wedge-shaped space formed by the river on the one side and a certain branch and an old ditch running therefrom to the river on the other.   It needs no argument to demonstrate that it is impossible to derive from these allegations a definite description of any particular forty acres

of land.   No surveyor could take them, and, guided by them alone, lay out this tract of land.   No court could take them, and, guided by them as setting forth the true contract between the parties, frame a decree which would be sufficiently definite and certain in its description of the land intended to be conveyed to identify the premises.   If a deed were executed in accordance with these allegations, it would be void for uncertainty in the description of the land.   In his prayer for the construction of the contract, and his prayer for its reformation, the plaintiff furnishes a more definite description of the land; but even here it is very doubtful whether the description is sufficient.   But, however this may be, the fatal defect in his allegations can not be cured by his prayers for relief.   The court can not make a new contract for the parties, but can only deal with the contract as they made it.   If, as seems to appear from the petition, upon attempting to lay off the forty acres of land according to the description contained in the bond for titles, a latent ambiguity in such description was discovered, which ambiguity the plaintiff desired cleared away by a verdict and a decree of the court, it was incumbent upon him, by proper allegations, to show to the court what particular tract of land the description in the bond for titles was intended to cover.   If a mistake was made by the parties to the contract in describing the land, and the plaintiff wished the bond for titles reformed so that it should properly describe the land which his intestate really purchased from Speir, he should, by his allegations, have distinctly pointed out to the court the particular land which was the subject-matter of the contract.   The plaintiff's allegations in reference to the forty-acre tract of land which his intestate purchased from Speir were too vague and uncertain to identify any particular body of land as being the one which was embraced in the contract as entered into by the parties. Admitting these allegations to be true, no case was presented for the construction or reformation of the contract by a court of equity.

Of course, there was no necessity whatever for the plaintiff to come into a court of equity in order to set up any defense which he may have to a suit by Speir against him as surety upon the notes.   If the plaintiff has any good defense to these notes, by reason of any misrepresentations by Speir which induced him to sign the notes, it will be time enough for him to set it up when Speir institutes such a suit, and he can then get the full benefit of it.

There was no error in sustaining the demurrers and dismissing the case.

*Judgment affirmed.   All concurring, except Little, J., absent.*